*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEW,

         Petitioner-Appellant,

v

JM III,

         Respondent-Appellee.

UNPUBLISHED
April 11, 2024

No. 367420
Wayne Circuit Court
LC No. 23-105990-PH

Before: CAVANAGH, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Petitioner appeals by right the trial court's order granting respondent's motion to terminate petitioner's personal protection order ("PPO") against him. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On June 7, 2023, petitioner filed a petition for a PPO against respondent, alleging that respondent, a neighbor, was following and threatening the petitioner, including "trying to mow into [petitioner] with [respondent's] over-sized lawnmower." Petitioner alleged that respondent's conduct constituted stalking as defined by MCL 750.411(h) and MCL 750.411(i). The petition was supported by affidavits from petitioner and other witnesses who purported to observe some of the alleged behavior by respondent. The following day, on June 8, 2023, the trial court entered an ex parte PPO on the basis of the trial court's conclusion that respondent committed "CONTINUOUS STALKING BEHAVIOR." The PPO was to remain in effect until June 7, 2024.

On June 22, 2023, respondent moved to terminate the PPO on the basis that he "did not commit the alleged actions." On July 24, 2023, petitioner was personally served an "Electronic Hearing Notice" for respondent's motion to terminate the PPO (the "Notice"). Respondent's motion was attached. Also attached was a July 11, 2023 notice of hearing, which stated that "[t]he court can modify, extend, or terminate the order even if you do not attend the hearing. It is important for you to attend." The Notice stated that, "[a]s of **May 11, 2020**, the **Family Division Court** will conduct all court proceedings remotely by <u>Zoom video and/or audio conferences</u> in an effort to minimize contact with the risk of COVID-19. You are receiving this communication due

-1-

to your upcoming hearing." The Notice informed petitioner that the hearing would be held before "Docket Judge PPO," on August 3, 2023, at 10:45 a.m., and it would be a Zoom hearing. Detailed instructions for entering the Zoom site were included.

The hearing on respondent's motion to terminate the PPO was held on August 3, 2023. Respondent and his attorney appeared for the hearing, but petitioner was not present nor was she represented by counsel. Without taking any testimony or evidence, the trial court granted respondent's motion and terminated the PPO. According to petitioner's verified statement included with her appeal, however, she followed all of the instructions on the Notice and "logged into [her] corresponding Judge's" waiting room at 10:30 a.m. on August 3, 2023. Petitioner states she logged into the PPO Zoom hearing and waited until approximately 11:20 a.m. when, "consistent with the 'Procedure' provided in the PPO hearing notice," petitioner sent the following e-mail, dated August 3, 2023, at 11:21 a.m., to PPO@3rdcc.org, which stated:

> I have a hearing that is scheduled in case number 23-105990-PH. The hearing is scheduled for 10:45 a.m. I have been in queue since approximately 10:30 this morning. The Judge's courtroom says that we are waiting for the host to start the meeting. It is now 11:20ish, should I be alarmed?

When she did not receive any response to her e-mail, petitioner contends that she then telephoned the number "provided" in the July 24, 2023 Notice, and she spoke with "Ms. Z" at the PPO office and explained her concern about her inability to join the PPO hearing. Petitioner contends that Ms. Z told her that the PPO court was running behind schedule, the PPO office was preparing to respond to her e-mail request for assistance, and that she was not the only person to call about the wait time. Ms. Z told petitioner that the court was like a doctor's office; if the doctor runs overtime with one patient, all patients are pushed back. Petitioner states that after her conversation with Ms. Z, she continued to wait until 4:45 p.m., and then she left the waiting room.

Petitioner further contends that on August 4, 2023, she telephoned and again spoke with Ms. Z and advised Ms. Z that she had never been brought into the hearing. Ms. Z acknowledged that she had spoken with petitioner the day before and understood the situation that had occurred the previous day. Petitioner states that she then called the court clerk, "Ms. Jones," who told her that "this does happen occasionally. It's like houses on the same block but you are knocking on the door down the street and we're at the other corner." According to petitioner, Ms. Jones recommended she "refile" her PPO "and see what the court wants to do at that time." Petitioner contends that Ms. Jones admitted that court staff should have "directed [her] to where [she] needed to be."

This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision to grant or deny a PPO, "including a respondent's motion to terminate a PPO, for an abuse of discretion." *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). "An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes." *Id.* "A trial court's findings of fact underlying a PPO ruling are reviewed for clear error." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021).

"The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

Because petitioner did not raise in the trial court any of the arguments regarding notice, due process, or jurisdiction, the arguments are waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Waived issues are ordinarily not subject to review by this Court. *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019). In addition, petitioner did not present any of the facts or evidence contained in the verified statement presented on appeal to the trial court in the first instance, and "[t]his Court's review is limited to the record established by the trial court . . . ." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Thus, we are prohibited from considering the substance of petitioner's evidence submitted on appeal.

## III. ANALYSIS

Petitioner contends that the trial court abused its discretion when it terminated her PPO because the procedures in the Notice were ambiguous, unclear, and confusing to the point that they violated petitioner's due-process right to be heard. Thus, according to petitioner, despite adhering to all of the requisites set forth in the Notice, she was not given the opportunity to be heard by the court.

The Notice informed petitioner of the time and location of the hearing that would be conducted on Zoom. The Notice included detailed instructions that specified how and where to navigate on the Zoom website. The Notice also stated that failure to appear for the hearing could result in the trial court granting respondent's motion to terminate the PPO. Petitioner did not appear in the court room for the hearing. Petitioner presents no evidence, as part of the record or otherwise, that the *trial court* had information that petitioner was waiting in the wrong Zoom waiting room.

Ultimately, this Court has no remedy that it can offer to petitioner. The issues that petitioner raises regarding violations of her right to due process, her failure to receive timely notice, the lack of personal jurisdiction, and the Notice being confusing and ambiguous, are all issues that cannot be raised for the first time on appeal. See *Johnson*, 329 Mich App at 126. There is no record evidence to support error or negligence by the trial court or its staff. Therefore, this Court has no basis to reverse the trial court's order or order the trial court to hold another hearing or change or vacate its prior order, and we conclude the trial court did not abuse its discretion when it granted respondent's motion. Petitioner may file a new petition for a PPO against respondent, assuming there is still a basis to do so.

Although we can offer no relief to petitioner, we pause to note here that if the allegations in petitioner's verified statement is true, it is clear that the court and its staff failed to ensure petitioner's due-process rights were protected. Our courts have long recognized the "constitutional right of access to the courts, whereby a plaintiff with a nonfrivolous legal claim has the right to bring that claim to a court of law." *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 436; 878 NW2d 891 (2015) (quotation marks and citation omitted). The due-process right guarantees litigants "adequate, effective, and meaningful"

opportunities to present their claims. *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 465; 639 NW2d 332 (2001).

We have little trouble presuming that if petitioner had been allowed to appear in person in court and had gone to the wrong courtroom, someone within the court building would have directed her to the correct courtroom without issue. The PPO docket was designed with pro se litigants in mind, so it should come as no surprise that litigants such as petitioner need additional help when appearing in court, especially by Zoom. No one apparently asked petitioner which virtual courtroom she was waiting in or whether she needed assistance finding the correct one. The responses she did allegedly receive were misleading and not helpful. If what petitioner claims happened is true, such failure by the court and its staff is unacceptable. It is not, however, within this Court's purview to make such determinations in the first instance, which squarely rests with the trial court.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick