PEOPLE v MALMQUIST

Docket No. 89586. Submitted May 8, 1986, at Grand Rapids. Decided
October 20, 1986. Leave to appeal denied, 428 Mich 854.

Steven R. Malmquist pled guilty in 58th District Court to a
charge of operating a motor vehicle while having an unlawful
blood alcohol level. He was sentenced to serve forty-five days in
jail, had his driver's license suspended for one year, and was
granted work release privileges if he was able to provide
transportation to and from work. When defendant reported to
the jail to begin his sentence, a chemical test revealed that he
had consumed alcohol before being transported to jail, appar-
ently in sufficient quantity to produce a blood alcohol level of
at least 0.10 percent. The district court subsequently withdrew
defendant's work release privilege without prior notice to him.
Defendant appealed to the Ottawa Circuit Court, which af-
firmed the revocation, James E. Townsend, J. The Court of
Appeals denied defendant leave to appeal. Defendant then
sought leave to appeal to the Supreme Court, which, in lieu of
granting leave to appeal, remanded the case to the Court of
Appeals for consideration as on leave granted, 424 Mich 862
(1985).

The Court of Appeals *held:*

1. The district court proceeded according to statute in revok-
ing defendant's work release privileges. No notice or hearing
was required by statute prior to the revocation.

2. Defendant's due process rights were not violated by the
revocation of his work release privilege without prior notice or
hearing. Defendant had no constitutionally protected liberty
interest in the work release privilege, particularly so since the
privilege was revoked before it began.

Affirmed.

CRIMINAL LAW — SENTENCING — WORK-RELEASE PRIVILEGES — REVO-
CATION OF WORK-RELEASE PRIVILEGES.

A defendant who is sentenced to a jail term and granted work

REFERENCES

Am Jur 2d, Criminal Law §§ 580 *et seq.*

Right to notice and hearing before revocation of suspension of
sentence, parole, conditional pardon, or probation. 29 ALR2d
1074.

release privileges may have those work release privileges revoked by the sentencing court without prior notice or hearing without violating either the statute under which the work release privileges were granted or the defendant's due process rights (MCL 801.251; MSA 28.1747[1]).

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Wesley J. Nykamp*, Prosecuting Attorney, and *Douglas L. Mesman*, Assistant Prosecuting Attorney, for the people.

*Orton, Tooman, Hale & McKown, P.C.* (by *Stephen B. McKown*), for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and M. E. DODGE,* JJ.

PER CURIAM. Defendant pled guilty to a charge of operating a motor vehicle while having an unlawful blood alcohol level, MCL 257.625(2); MSA 9.2325(2). He was sentenced to serve forty-five days in jail, had his driver's license suspended for one year, and was granted work release (day parole) privileges if he was able to provide transportation to and from work. The district court apparently placed no other conditions on defendant's work release.

When defendant reported to the jail to begin his sentence, a chemical test revealed that he had consumed alcohol before being transported to jail, apparently in sufficient quantity to produce a blood alcohol level of at least 0.10 percent. The district court subsequently withdrew defendant's work release privileges without notice to him. The circuit court affirmed and this Court denied leave to appeal. The Supreme Court remanded the case to this Court for consideration as on leave granted. 424 Mich 862 (1985). We affirm.

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant's first issue is easily answered. MCL 801.251; MSA 28.1747(1) provides:

> A sentence or commitment of a person to a county jail for any reason may grant such person the privilege of leaving the jail during necessary and reasonable hours for any of the following purposes:
> (a) Seeking employment;
> (b) Working at his employment;
> (c) Conducting his own self-employed business or occupation, including in the case of a woman housekeeping and caring for the needs of her family;
> (d) Attendance at an educational institution; or
> (e) Medical treatment.
> A person may petition the court for such privilege at the time of sentence or commitment, and in the discretion of the court may renew his petition. The court may withdraw the privilege at any time by order entered with or without notice.

The district court clearly proceeded according to the statute. No notice or hearing was required by the statute. We disagree that this provision must be read together with MCL 801.258; MSA 28.1747(8). The latter provision concerns reports by the sheriff of violations of any conditions specified by the court for work release. It does not relate to the trial court's withdrawal of the privilege.

Defendant's second issue, however, is considerably more difficult. Defendant argues that the district court's withdrawal of his work release privileges violated due process. Recognizing that no cases have interpreted MCL 801.251; MSA 28.1747(1), defendant analogizes withdrawal of the work release/day parole privileges to parole or probation revocations. The prosecutor, with no citation of authority, argues that the two situations may be distinguished. In the parole situation,

a person has been released from regular confinement. In the probation situation, a person has not yet been confined. To revoke the freedom enjoyed by such persons certainly requires the observance of due process. A person on a work release program, however, remains a prisoner who is given only temporary and limited "freedom."

We emphasize that even under the terms of the work release provision, defendant was to remain an inmate under a jail sentence. The United States Supreme Court noted in *Wolff v McDonnell,* 418 US 539, 555-556; 94 S Ct 2963; 41 L Ed 2d 935 (1974), that prisoners may claim the protections of the due process clause. This fact in no way implies, however, that such rights are not "subject to restrictions imposed by the nature of the regime to which [the prisoners] have been lawfully committed." *Id.* Whether any procedural protections are due depends on the extent to which an individual will be "condemned to suffer grievous loss." *Morrissey v Brewer,* 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972). What procedural due process may require under any given set of circumstances requires the determination of the precise nature of the governmental function involved as well as of the private interest affected. *Id.*

The United States Supreme Court has found that due process requirements, including notice and hearings, apply to the loss of liberty occasioned by parole revocation, *Morrissey, supra,* and probation revocation, *Gagnon v Scarpelli,* 411 US 778, 782; 93 S Ct 1756; 36 L Ed 2d 656 (1973). There is, however, no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v Nebraska Penal & Correctional Complex Inmates,* 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979). The critical distinction between a

parole revocation and parole release is that of being deprived of the liberty one has and being denied a conditional liberty one desires. The Court noted in *Greenholtz* that a state may create a protected entitlement or expectation of liberty, such as parole, by statute, for example, though such must be determined on a case-by-case basis. 442 US 12. A state creates a protected liberty interest by placing substantive limitations on official discretion. A state has not created a constitutionally protected liberty interest if the decisionmaker can deny the requested relief for no reason at all. *Olim v Wakinekona,* 461 US 238, 249; 103 S Ct 1741; 75 L Ed 2d 813 (1983).

The statute at issue puts the privilege of work release from county jail within the court's discretion. Our reading of MCL 801.251 to 801.258; MSA 28.1747(1) to 28.1747(8) does not convince us that the Legislature has created a protectible expectation of the privilege. The instant statute and case thus differ from those cases involving work release from prison administered by prison officials through a complex regulatory scheme.[1] The district court's revocation of such work release privilege required neither notice nor a hearing.

Moreover, as did the circuit court, we find the instant case analogous to *Jago v VanCuren,* 454 US 14; 102 S Ct 31; 70 L Ed 2d 13 (1981), in that defendant's work release privileges were revoked

---

[1] See, e.g., *Whitehorn v Harrelson,* 758 F2d 1416 (CA 11, 1985) (work release privilege terminated); *Garcia v DeBatista,* 642 F2d 11 (CA 1, 1981) (reconfinement to prison from a halfway house); *Winsett v McGinnes,* 617 F2d 996 (CA 3, 1980), cert den sub nom *Anderson v Winsett,* 449 US 1093; 101 S Ct 891; 66 L Ed 2d 822 (1981) (denial of access to work release program); *Schumate v New York,* 373 F Supp 1166 (SD NY, 1974) (summary removal from work release program). The instant case is more like the work release denial in *Baumann v Arizona Dep't of Corrections,* 754 F2d 841 (CA 9, 1985), in which no constitutionally protected liberty interest was found given the complete discretion to deny work release privileges.

before they began. Until defendant actually began the work release program, he had only an expectation. While we do not believe the statute gives rise to a constitutionally protected liberty interest, it certainly does not do so prior to existence of the privilege. In *Jago,* the United States Supreme Court found no constitutionally protected liberty interest in an expectation of parole or reliance on "mutually explicit understandings" that the defendant would be paroled. Though we reach a different conclusion and do not believe it is necessary to distinguish the cases, the fact that defendant had not yet exercised the privilege would distinguish this case from the parole revocation situation discussed above and *Commonwealth v Christina,* 225 Pa Super 95; 311 A2d 318 (1973), a case finding a constitutionally protected liberty interest under a very similar county jail work release statute.

Affirmed.