MORALES v PAROLE BOARD
MEYERS v PAROLE BOARD

Docket Nos. 239936, 240458. Submitted October 8, 2002, at Lansing. Decided December 16, 2003, at 9:00 A.M. Leave to appeal denied, 470 Mich ___.

Rene J. Morales, a prisoner under the jurisdiction of the Department of Corrections, sought leave to appeal to the Grand Traverse Circuit Court from a decision of the Parole Board denying him parole. The court, Philip E. Rodgers, Jr., J., granted leave to appeal and remanded the matter to the Parole Board for rehearing. The Parole Board appealed by leave granted, alleging that the circuit court lacked jurisdiction to consider an appeal. (Docket No. 239936).

Lawrence C. Meyers, a prisoner under the jurisdiction of the Department of Corrections, sought leave to appeal to the Ingham Circuit Court from a decision of the Parole Board denying him parole. The court, Lawrence M. Glazer, J., denied leave to appeal and dismissed the matter on the basis that the court lacked jurisdiction to consider the appeal. Meyers appealed by leave granted. (Docket No. 240458). The appeals were consolidated.

The Court of Appeals *held*:

Appeals by prisoners from decisions of the Parole Board are not provided for by the Department of Corrections act, MCL 791.201 *et seq.*, the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, or the Revised Judicature Act (RJA), MCL 600.631 *et seq.* The order of the circuit court in Docket No. 239936 must be reversed, and the order of the circuit court in Docket No. 240458 must be affirmed.

1. The amendment of MCR 7.104(D), effective March 10, 2000, eliminated any reference to appeals by inmates from decisions of the Parole Board.

2. Decisions by the Parole Board are not "contested cases" and therefore are not appealable under the APA.

3. The Legislature, in 1999 PA 191, eliminated appeals by prisoners of decisions of the Parole Board that previously had been provided for in the Department of Corrections act.

4. No right is at issue in these appeals because a prisoner has no right to parole. A prisoner may not appeal under the RJA because Const 1963, art 6, § 28 restricts judicial review to those final decisions, findings, rulings, and orders affecting private rights or

licenses. No private rights or licenses are involved in decisions of the Parole Board to deny parole. The RJA specifically states that appeals under the RJA shall be made in accordance with the rules of the Supreme Court. No rule of the Supreme Court refers to prisoner appeals of Parole Board decisions.

5. The circuit court in Docket No. 239936 erred in relying on an analysis of the House Legislative Analysis Section to determine that the RJA provides for an appeal to the circuit court by leave granted.

6. There is no requirement that the parole guidelines employed by the Parole Board must conform to the sentencing guidelines. The circuit court in Docket No. 239936 erred in finding that such conformance was required.

7. The exclusion of prisoners' ability under MCL 791.234 to appeal from the denial of parole by the Parole Board is rationally related to the legitimate governmental interest of saving public funds and does not violate equal protection guarantees.

Reversed in Docket No. 239936; affirmed in Docket No. 240458.

1. PRISONERS AND PRISONERS — PAROLE — APPEAL.

Appeals to the circuit court by prisoners from decisions of the Parole Board denying parole are not provided for by the Department of Corrections act, the Administrative Procedures Act, or the Revised Judicature Act (MCR 7.104[D]; MCL 24.201 *et seq.*, 600.631 *et seq.*, 791.201 *et seq.*).

2. PRISONERS AND PRISONERS — PAROLE — PAROLE GUIDELINES — SENTENCING GUIDELINES.

The parole guidelines employed by the Parole Board need not conform to the sentencing guidelines.

*Barbara R. Levine* for Rene Jose Morales.

*Stuart G. Friedman* for Lawrence C. Meyers.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Charles C. Schettler, Jr.*, Assistant Attorney General, for the Parole Board.

Before: DONOFRIO, P.J., and SAWYER and O'CONNELL, JJ.

DONOFRIO, P.J. These consolidated appeals concern conflicting circuit court decisions regarding whether a circuit court may hear appeals under the Revised

Judicature Act (RJA), MCL 600.631 *et seq.*, from the denial of parole by the Parole Board.

In Docket No. 239936, the Parole Board appeals by leave granted the circuit court's order granting petitioner Rene Jose Morales leave to appeal and remanding the matter to the Parole Board for rehearing. Respondent board contends the court erred by ruling that an appeal from a determination of the Parole Board may be brought under the RJA.

In Docket No. 240458, petitioner Lawrence C. Meyers appeals by leave granted a different circuit court's order dismissing petitioner's appeal from the Parole Board's denial of parole. Petitioner argues that the circuit court had jurisdiction to hear his appeal under the RJA.

We find that appeals from the Parole Board's denial of parole are not allowed under the RJA, and thus reverse the order of the circuit court in Docket No. 239936, and affirm the order of the circuit court in Docket No. 240458.

INTRODUCTION

These appeals involve two conflicting circuit court decisions regarding the appealability of denials of parole by the Parole Board. In Docket No. 239936, the circuit court granted judicial review under the RJA of the Parole Board's decision denying petitioner Morales parole. Respondent Parole Board appealed by leave granted. In Docket No. 240458, the circuit court denied petitioner Meyers's request for judicial review under the RJA of the Parole Board's denial of his parole. This Court granted petitioner Meyers's application for leave to appeal. The appeals were con-

solidated in order to facilitate our review of the common issues and to resolve the conflict.

I

Initially we observe that both petitioner Morales and petitioner Meyers were paroled during the pendency of these appeals. Following his parole, petitioner Morales moved to dismiss the case on the ground that it was moot. This Court denied the motion. Petitioner Meyers, instead of moving for a dismissal, argues on appeal that this Court should hear this case because it is of public significance and is capable of repetition and has so far evaded review.

This Court's duty is to consider and decide actual cases and controversies. *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002). "To that end, this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Id.* This Court will entertain cases that are technically moot if the issues involved are of public significance and are likely to recur in the future and yet evade judicial review. *In re Wayne Co Election Comm*, 150 Mich App 427, 432; 388 NW2d 707 (1986). Generally, a case is not moot if the issues sought to be litigated are capable of repetition, yet evade review. *Ferency v Secretary of State*, 139 Mich App 677, 681; 362 NW2d 743 (1984).

While both petitioners in this case have been paroled, there is no guarantee they will remain on parole. If returned to prison and again denied parole,

either petitioner could once again initiate the appeal process. Therefore, we find this issue capable of repetition and not moot. Because this issue is of public significance and capable of repetition while evading review, we will hear the case.

II

In Docket No. 239936 the Parole Board first argues that petitioner had no legal ground to seek an appeal of its decision denying petitioner Morales parole. The Parole Board argues that the Legislature, through its amendment of the Department of Corrections act, MCL 791.201 *et seq.*, and the Michigan Supreme Court, through the amendment of its court rule, MCR 7.104(D), eliminated appeals by inmates from denials of parole. Parole eligibility is governed by statute, and interpretations and applications of statutes are questions of law reviewed de novo. *Jackson v Dep't of Corrections*, 247 Mich App 380, 381; 636 NW2d 305 (2001).

This Court in *Hopkins v Parole Bd*, 237 Mich App 629, 637-638; 604 NW2d 686 (1999), stated that,

> [g]enerally, three potential avenues of review exist by which an aggrieved party may challenge an administrative body's decision: (1) review pursuant to a procedure specified in a statute applicable to the particular agency, (2) the method of review for contested cases under the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, or (3) an appeal pursuant to § 631 of the Revised Judicature Act, MCL 600.631; MSA 27A.631, and Const 1963, art 6, § 28, in conjunction with MCR 7.104(A).

Since the Parole Board is an administrative body, our analysis focuses on the three avenues enumerated in *Hopkins, supra*.

A

Regarding the first avenue, petitioner Morales concedes there is no dispute that the 2000 amendment of the Department of Corrections act, MCL 791.201 *et seq.*, effectively barred appeals by inmates from denials of parole. The circuit court stated in its opinion that "[i]n order to bring the Michigan Court Rules into conformity with the law and provide a specific procedure for bringing parole appeals, the Michigan Supreme Court amended MCR 7.104 in 1996 to add subsection D[,] which specifically provides for appeals from decisions of the Michigan Parole Board." The circuit court also stated that our Supreme Court once again amended MCR 7.104(D) in 2000 in conformance with amended MCL 791.234, effective March 10, 2000.

Because of the nature of the case, we find it necessary to engage in a brief discussion of the history of parole appeals in Michigan. Before 1982, inmates had no statutory right to appeal their parole denial unless that denial failed to comply with the law: "The action of the parole board in releasing prisoners shall not be reviewable if in compliance with the law." MCL 791.234(5), amended by 1978 PA 81. In 1982, the Legislature amended subsection 34(5) in 1982 PA 314, and, for the first time, statutorily provided for inmate appeals:

> The time of a prisoner's release on parole shall be discretionary with the parole board. The action of the parole

board in granting or denying a parole shall be appealable to the circuit court by leave of the court. [MCL 791.234(5), amended by 1982 PA 314.]

Then in 1992, the Legislature amended the statute to include appeals by prosecutors and victims:

[A] prisoner's release on parole shall be discretionary with the parole board. The action of the parole board in granting or denying a parole shall be appealable by the pris-<sub>o</sub>oner, the prosecutor of the county from which the prisoner was committed, or the victim of the crime for which the prisoner was convicted. The appeal shall be to the circuit court by leave of the court. [MCL 791.234(5), amended by 1992 PA 181.]

The relevant provision, MCL 791.234(9),[1] since its amendment by 1999 PA 191 states that,

a prisoner's release on parole is discretionary with the parole board. The action of the parole board in granting a *parole* is appealable by *the prosecutor* of the county from which the prisoner was committed *or the victim* of the crime for which the prisoner was convicted. The appeal shall be to the circuit court in the county from which the prisoner was committed, by leave of the court. [Emphasis added.]

The 1999 PA 191 amendment of MCL 791.234, deleting the language allowing inmate appeals of Parole Board decisions by leave granted became effective March 10, 2000. Our Supreme Court amended MCR 7.104(D) on February 29, 2000. This amendment was based on the Legislature's amendment of MCL 791.234, 1999 PA 191. Like 1999 PA 191, the amend-

---

[1] The 1999 PA 191 amendment of the statute moved the appeal language to MCL 791.234(9) and is the only reference to appeals of the Michigan Parole Board decisions in MCL 791.201 *et seq.*

ment of MCR 7.104(D) became effective March 10, 2000, and eliminated any reference to appeals by inmates of Parole Board decisions.

The Legislature is presumed to have intended the clear meaning it expressed. *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). Here, the Legislature has provided for an appeal of a Parole Board decision only by the prosecutor or the crime victim. By eliminating the phrase, "shall be appealable by the prisoner," 1999 PA 191, the Legislature clearly intended the meaning expressed: a prisoner's right to appeal by leave granted has been eliminated. Thus, we find, and petitioner Morales concedes, that the Legislature and our Supreme Court eliminated inmate appeals by leave granted of Parole Board decisions under the Department of Corrections act, MCL 791.201 *et seq.*

B

In his brief on appeal, as it relates to the second avenue of review, petitioner Morales also concedes that an inmate may not appeal under the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, from a decision of the Parole Board. It is well-settled that parole decisions are not "contested cases" and therefore are not appealable under the APA. *Hopkins, supra*, 237 Mich App 639. Accordingly, the only contested issue before us is whether a prisoner may appeal under the RJA from the denial of parole.

C

Regarding the third avenue, petitioner Morales asserts that the RJA still provides for inmate appeals,

because the Legislature only eliminated inmate appeals under the Department of Corrections act. With respect to the RJA, the circuit court in Docket No. 239936 found that "the legislation and the amended court rules did not divest prisoners of their ability to appeal parole decisions under the [RJA]." The court found that "any decision of any state agency 'from which an appeal or other judicial review has not otherwise been provided for by law' may be appealed to the circuit court for the county where the appellant resides."

The Parole Board contends that the circuit court's ruling in Docket No. 239936 that a prisoner may appeal his parole denial under § 631 of the RJA is clearly legal error because the RJA applies only to private rights and licenses. The Parole Board further asserts that the denial of parole is not the denial of a private right, and this Court has already held that the RJA does not apply to inmate appeals of Parole Board decisions. Statutory interpretation is reviewed de novo. *Miller v Mercy Mem Hosp*, 466 Mich 196, 201; 644 NW2d 730 (2002).

MCL 600.631 of the RJA provides:

An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court.

Review of administrative decisions under the RJA is limited to the review provided for by Const 1963, art

6, § 28. *Southeastern Oakland Co Incinerator Auth v Dep't of Natural Resources*, 176 Mich App 434, 438; 440 NW2d 649 (1989). Const 1963, art 6, § 28 provides, in pertinent part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

Citing *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 488; 586 NW2d 563 (1998), and *Brandon School Dist v Michigan Ed Special Services Ass'n*, 191 Mich App 257, 263; 477 NW2d 138 (1991), the circuit court stated: "A prisoner has a right to have the Parole Board act within its authority; and not in violation of the constitution or a statute, in excess of its statutory authority or jurisdiction, or upon unlawful procedures resulting in material prejudice, or in a manner that is arbitrary and capricious." The circuit court held that "a prisoner does have a right to a parole board's decision made in accordance with the law."

We do not disagree that the Parole Board, as an entity within the Department of Corrections possessing exclusive discretion to grant or deny parole, is charged with making decisions in accordance with the law. MCL 791.204; MCL 791.231 *et seq.*; *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003); *Hopkins, supra*, 237 Mich App 636-637.

But, the circuit court ignored the holding of *Hopkins.* Respondent correctly cites *Hopkins, supra,* 237 Mich App 639, for the proposition that an inmate may not appeal under the RJA because Const 1963, art 6, § 28 restricts judicial review to those final decisions, findings, rulings, and orders *affecting private rights or licenses.*

In *Hopkins, supra,* 237 Mich App 639, this Court addressed a circuit court's abuse of its discretion in reversing the Parole Board's decision denying parole. In examining the Parole Board's discretionary determinations concerning whether to grant parole, this Court held that "the constitutional standard of review does not apply to this case, which involves neither a decision affecting a private right or license nor an evidentiary hearing." *Id.* We agree that there is no right at issue because a prisoner has no right to parole. "A prisoner enjoys no constitutional or inherent right to be conditionally released from a validly imposed sentence." *Jones, supra,* 468 Mich 651, citing *Greenholtz v Inmates of Nebraska Penal & Correctional Complex,* 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979), and *People v Malmquist,* 155 Mich App 521; 400 NW2d 317 (1986).

Importantly, MCL 600.631 states specifically that appeals under the RJA "shall be made in accordance with the rules of the supreme court." As mentioned above, our Supreme Court has amended the court rule, MCR 7.104(D), effective March 10, 2000, eliminating any reference to inmate appeals of Parole Board decisions. This being the case, we can envision no scenario where a prisoner could appeal the Parole Board's decision under the RJA "in accordance with

the rules of the supreme court" when the court rules do not provide for such an appeal.

Despite petitioners' contentions, the legality of petitioners' detention is not insulated from judicial oversight. Admittedly, statutory review is no longer provided for, this is not a contested case under the APA, and review under the RJA is precluded because there is no private right or license at issue. However, a prisoner's right to file a complaint for habeas corpus is guaranteed by the Michigan Constitution. *Hinton v Parole Bd*, 148 Mich App 235, 244; 383 NW2d 626 (1986), citing Const 1963, art 1, § 12. Regarding an action for habeas corpus, this Court has stated that

> [a] complaint for habeas corpus is designed to test the legality of detaining an individual and restraining him of his liberty. *In re Huber*, 334 Mich 100; 53 NW2d 609 (1952); *Trayer v Kent County Sheriff*, 104 Mich App 32; 304 NW2d 11 (1981). If a legal basis for detention is lacking, a judge must order the release of the detainee from confinement. MCL 600.4352; MSA 27A.4352. However, the writ of habeas corpus deals only with radical defects which render a judgment or proceeding absolutely void. *In re Stone*, 295 Mich 207; 294 NW2d 156 (1940); *Walls v Director of Institutional Services*, 84 Mich App 355; 269 NW2d 599 (1978). "A radical defect in jurisdiction contemplates * * * an act or omission by state authorities that clearly contravenes an express legal requirement in existence at the time of the act or omission." *People v Price*, 23 Mich App 663, 671; 179 NW2d 177 (1970). [*Hinton, supra*, 148 Mich App 244-245.]

Therefore, under certain radical circumstances, a prisoner has a right to file a complaint for habeas corpus. Although not a completely exhaustive list, in the unlikely scenario where the Parole Board has denied a prisoner parole exclusively on the basis of

his race, religion, or national origin, a complaint for habeas corpus would be proper.

Additionally, an action for mandamus is an option for prisoners in certain instances, as our Supreme Court has recently enunciated in *Jones, supra*. In *Jones, supra*, our Supreme Court held that the proper remedy for the failure of the Department of Correction to hold a timely fact-finding hearing on a charge of parole violation as required by statute, MCL 791.240a(1), is a complaint for an order of mandamus. Thus, a prisoner, may seek a writ of mandamus to compel compliance with a statutory duty. The *Jones* Court specifically stated that

> [w]here an official has a clear legal duty to act and fails to do so, the appropriate remedy is an order of mandamus. See *In re MCI*, 460 Mich 396, 442-443; 596 NW2d 164 (1999); *Lickfeldt v Dep't of Corrections*, 247 Mich App 299, 302; 636 NW2d 272 (2001). Where . . . the Legislature has established a clear, ministerial duty, but has failed to prescribe any consequence for a violation of that duty, a plaintiff may seek a writ of mandamus to compel compliance with the statutory duty. [*Jones, supra*, 146 Mich 658.]

We find it important to point out that the issuance of a writ of mandamus is proper only where (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial and involves no exercise of discretion or judgment, and (4) no other remedy exists, legal or equitable, that might achieve the same result. *Tuscola Co Abstract Co, Inc v Tuscola Co Register of Deeds*, 206 Mich App 508, 510-511; 522 NW2d 686 (1994). We stress that mandamus is an extraordinary remedy and it will not lie to review or

control the exercise of discretion vested in a public official or administrative body. *Teasel v Dep't of Mental Health*, 419 Mich 390, 409-410; 355 NW2d 75 (1984). In any event, where there has been a ministerial error or omission, the remedy of mandamus is available to prisoners.

In summary, after carefully reviewing the law, we find that appeals of denials of parole are not allowed under the RJA. However, we are careful to point out that our decision does not leave prisoners without recourse to have the judiciary review the legality of an inmate's imprisonment, and prisoners do have the legal tools of habeas corpus and mandamus available under the proper circumstances.

III

Respondent argues that the Grand Traverse Circuit Court erred in Docket No. 239936 in relying on a House bill analysis when it determined that an appeal from the denial of parole could be brought under the RJA. On appeal, questions of law are reviewed de novo. *McCaw v T & L Operations, Inc*, 217 Mich App 181, 185; 550 NW2d 852 (1996). The Grand Traverse Circuit Court conceded that a prisoner does not have a right to parole under the amended corrections act statute, but pointed to a statement in the legislative analysis that stated that the RJA explicitly authorizes appeals of Parole Board hearings. Petitioner Meyers, in Docket No. 240458, argues that because the legislative analysis states that appeals of denials of parole are available under the RJA, the Ingham Circuit Court erred in not granting his appeal.

The House Legislative Analysis of House Bill 4624 as enrolled for 1999 PA 191 provided:

> The bill should drastically cut down on the burgeoning number of prisoner appeals of parole denials by eliminating such appeals *under the corrections code.* However, the bill still would leave prisoners recourse to appeal under the Revised Judicature Act (RJA), although the RJA has a higher burden of proof under an "abuse of discretion" standard. That is, the bill would leave intact a prisoner's right to appeal a parole denial under the RJA, but in order for the appeal to be successful, the prisoner would have [to] show competent, material and substantial evidence that the parole board's decision was not supported by the law. Consequently, the bill should cut down on the number of prisoner appeals, make it easier for the courts to dismiss cases that wouldn't meet this higher burden of proof under the RJA, and would make it easier and less expensive for the attorney general's office to respond to such appeals. [House Legislative Analysis, HB 4624, March 21, 2000.]

The law is settled that "in Michigan, a legislative analysis is a feeble indicator of legislative intent and is therefore a generally unpersuasive tool of statutory construction." *Frank W Lynch & Co v Flex Technologies, Inc,* 463 Mich 578, 587; 624 NW2d 180 (2001). Legislative histories are free to be created by special interest pleaders and legislative staffers. *Id.* Because of the risk a court may rely on the dubious authenticity of the analysis, even the analyses themselves carry a warning "that they do not constitute an official statement of legislative intent." *Id.,* at 587 n 7.

> These staff analyses are entitled to little judicial consideration in resolving ambiguous statutory provisions because: (1) such analyses are not an official form of legislative record in Michigan, (2) such analyses do not purport to represent the views of legislators, individually or collectively,

but merely to set forth the views of professional staff offices situated within the legislative branch, and (3) such analyses are produced outside the boundaries of the legislative process as defined in the Michigan Constitution, and which is a prerequisite for the enactment of a law. Const 1963, art 4, §§ 26 & 33. [*In re Certified Question from the United States Court of Appeals for the Sixth Circuit,* 468 Mich 109, 115 n 5; 659 NW2d 597 (2003).]

A bill analysis does not necessarily represent the view of even a single legislator. *Lynch, supra,* 463 Mich 587 n 7.

We find that the Grand Traverse Circuit Court erred in relying on the House Legislative Analysis to allow petitioner Morales to appeal under the RJA because the analysis is not a reliable indicator of legislative intent. Moreover, as we concluded in section II of this opinion, prisoners may not appeal under the RJA from denials of parole.

IV

The next issue on appeal concerns the relationship between the parole guidelines and the sentencing guidelines. In Docket No. 239936, the circuit court found that the Parole Board, in deciding whether to parole petitioner Morales, "rescore[d] the sentencing guidelines in the guise of parole guidelines." The circuit court stated that the Parole Board's actions were inappropriate because they were tantamount to making new findings of fact that were previously decided at trial and were already in the underlying record. On the basis of what it found to be an erroneous rescoring, the circuit court found that the Parole Board exceeded its authority when it denied petitioner Morales parole.

Respondent argues that by requiring the parole guidelines to be consistent with the sentencing guidelines, the circuit court is giving the sentencing court the authority to calculate the parole guidelines. Respondent further states that as long as there is a factual basis supporting the Parole Board's calculation of the parole guidelines, they do not have to be consistent with the sentencing guidelines. Petitioner Morales argues that if the Parole Board is free to disregard the circuit court's findings, the Parole Board will effectively have the authority to add years to an inmate's sentence. Questions of law are reviewed de novo on appeal. *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

The sentencing guidelines were created by the Michigan Supreme Court to " 'eliminate most of the serious inequities in the indeterminate sentence process and thus obviate to a great extent the necessity for appellate review of sentences.' " *People v Clark* 147 Mich App 237, 242; 382 NW2d 759 (1985) (citation omitted). Our Supreme Court recently observed that the Legislature adopted the statutory sentencing guidelines to "reduce unjustified disparities in sentencing." *People v Babcock*, 469 Mich 247, 267 n 21; 666 NW2d 231(2003). Whereas, the parole guidelines were created by the Michigan Department of Corrections for the purpose of "assist[ing] the parole board in making release decisions that enhance the public safety." MCL 791.233e(1). The calculation of both the sentencing guidelines and the parole guidelines depends on the presentence investigation report.

The presentence investigation report is an information-gathering tool for use by the sentencing court. *People v Burton*, 44 Mich App 732, 734; 205 NW2d 873

(1973), overruled in part by *People v Wright*, 431 Mich 282, 298 n 18; 430 NW2d 133 (1988). Therefore, its scope is necessarily broad. *Id.* A judge preparing to sentence a defendant may consider comments made by the defendant to the probation officer during the presentence interview in addition to evidence adduced at trial, public records, hearsay relevant to the defendant's life and character, and other criminal conduct for which the defendant has not been charged or convicted *Burton, supra,* 44 Mich App 734-735.

The Michigan Court Rules provide that the presentence investigation report must include "a complete description of the offense and the circumstances surrounding it, . . . information concerning the financial, social, psychological, or physical harm suffered by any victim of the offense, . . . any statement the defendant wishes to make . . . [and] any other information that may aid the court in sentencing." MCR 6.425(A). To ensure accuracy, the defendant must be given an opportunity to review his presentence investigation report before sentencing. *People v Naugle*, 152 Mich App 227, 238; 393 NW2d 592 (1986).

According to MCL 791.233e(2), when calculating the parole guidelines, the Department of Corrections shall consider factors including, but not limited to, the following:

> (a) The offense for which the prisoner is incarcerated at the time of parole consideration.
>
> (b) The prisoner's institutional program performance.
>
> (c) The prisoner's institutional conduct.
>
> (d) The prisoner's prior criminal record. As used in this subdivision, "prior criminal record" means the recorded

criminal history of a prisoner, including all misdemeanor and felony convictions, probation violations, juvenile adjudications for acts that would have been crimes if committed by an adult, parole failures, and delayed sentences.

(e) Other relevant factors as determined by the department, if not otherwise prohibited by law.

Whether the parole guidelines must be consistent with the sentencing guidelines is an issue of first impression in Michigan, hence we will look to other jurisdictions for guidance. In a case from the United States District Court for the northern district of Illinois, *Laivinieks v True*, 1994 US Dist LEXIS 2574 (ND Ill, 1994), the petitioner appealed the denial of parole, arguing his due process rights were violated when the parole commission scored an offense severity rating differently from that of the sentencing court. *Id.* at 6-7. The court explained that "[u]nder the sentencing guidelines, the Parole Commission only needs to consider the presentence investigation report—the guidelines do not require that the Parole Commission actually follow the presentence report." *Id.* at 7. The *Laivinieks* court explained that the nonbinding nature of the presentence investigation report was consistent with the well-established sole authority of the parole commission to grant or deny parole. *Id.* Because the parole commission exercises this power exclusively, the court held that the parole commission's calculation of the guideline range did not violate the petitioner's due process rights. *Id.* at 8. "Although the Parole Commission determined the offense severity rating and salient factor higher than that calculated by the probation officer in the presentence report, the Parole Commission was not

bound to follow the probation officer's calculations—only to consider them." *Id.*

We find the reasoning in *Laivinieks, supra,* useful. The Parole Board is allowed to consider the presentence investigation report, because the report must be sent to the Department of Corrections in accord with MCL 771.14 and the Michigan Court Rules, and it relates to the offense for which the prisoner is incarcerated. Similar to the parole commission in *Laivinieks, supra,* the Parole Board here is not bound by the probation officer's calculations in the presentence investigation report, but may consider them in addition to considering the prisoner's institutional program performance, his institutional conduct, his prior criminal record, and any other relevant factor as determined by the Department of Corrections. MCL 791.233e(2). Likewise, the nonbinding nature of the presentence investigation report is in accord with Michigan law that provides that the Parole Board has exclusive jurisdiction and discretion to parole a prisoner. MCL 791.204; MCL 791.234(9). A prisoner has no constitutionally protected or inherent right to parole, only a hope or expectation of it. *Jones, supra,* 468 Mich 651; *Hurst v Dep't of Corrections, Parole Bd,* 119 Mich App 25, 28-29; 325 NW2d 615 (1982).

We recognize that "[a] court must not judicially legislate by adding into a statute provisions that the Legislature did not include." *In re Wayne Co Prosecutor,* 232 Mich App 482, 486; 591 NW2d 359 (1998). Neither may a reviewing court substitute its judgment for the Parole Board's decision. *Killebrew v Dep't of Corrections,* 237 Mich App 650; 604 NW2d 696 (1999). With this in mind, after reviewing the applicable statutes,

together with the Michigan Court Rules, we find that there is no requirement that the parole guidelines must conform to the sentencing guidelines. MCL 771.14; MCL 791.233e; MCR 6.425. Because the circuit court cannot substitute its judgment for that of the Parole Board, or read into the statute that the Parole Board's guidelines must be consistent with the sentencing guidelines, we conclude that the circuit court in Docket No. 239936 erred in finding that the Parole Board's calculation of the parole guidelines must be consistent with the sentencing guidelines.

V

Finally, petitioner Meyers argues that the amended corrections act violates the Equal Protection Clause because it treats prisoners differently than prosecutors and victims of crimes. Constitutional questions are questions of law reviewed de novo on appeal. *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 623; 552 NW2d 657 (1996).

Equal protection is guaranteed under the federal and state constitutions, US Const, Am XIV; Const 1963, art 1, § 2. *Frame v Nehls*, 452 Mich 171, 183; 550 NW2d 739 (1996). Equal protection guarantees under the Michigan Constitution ensure that people similarly situated will be treated alike. *Yaldo, supra,* 217 Mich App 623. Equal protection does not guarantee that people in different circumstances will be treated the same. *Id.*

"Unless the discrimination impinges on the exercise of a fundamental right or involves a suspect class, the inquiry under the Equal Protection Clause is whether the classification is rationally related to a legitimate

governmental purpose." *Frame, supra,* 452 Mich 183. However, when legislation creates a classification scheme that infringes on a fundamental right, strict scrutiny analysis is applied to the statute. *Doe v Dep't of Social Services,* 439 Mich 650, 662; 487 NW2d 166 (1992). Under strict scrutiny analysis, a statute will be upheld if the state can demonstrate that classification was tailored to serve a compelling governmental interest. *Id.* Petitioner cites *Bounds v Smith,* 430 US 817; 97 S Ct 1491; 52 L Ed 2d 72 (1977), for support that the statute violates his fundamental right of access to the courts. The Court in *Bounds, supra,* 430 US 828, held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, *Bounds, supra,* relates to prisons providing prisoners with the legal resources necessary to appeal their convictions. The case at bar is distinguishable from *Bounds,* because prisoners have no right to parole. *Jones, supra,* 468 Mich 651.

This Court has held that "neither the constitution nor the parole statute creates a right to parole for inmates." *Hurst, supra,* 119 Mich App 29. As mentioned above, the United States Supreme Court has also addressed the issue of parole boards denying prisoners parole and has held, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz, supra,* 442 US 7. The Supreme Court has also held that "given a valid conviction, the criminal defendant has been constitutionally deprived

of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v Fano*, 427 US 215, 224; 96 S Ct 2532; 49 L Ed 2d 451 (1976).

If a statute affects an inherently suspect classification, strict scrutiny analysis is applied. *Vargo v Sauer*, 457 Mich 49, 60; 576 NW2d 656 (1998). Race, ethnicity, and national origin are suspect classifications. *Frontiero v Richardson*, 411 US 677, 682; 93 S Ct 1764; 36 L Ed 2d 583 (1973). Strict scrutiny analysis is not applicable here because status as a prisoner is not a suspect classification. *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 469; 639 NW2d 332 (2001).

Economic and social legislation are examined using the rational basis test. *Rouge Parkway Assoc v City of Wayne*, 423 Mich 411, 421-422; 377 NW2d 748 (1985). Under the rational basis test, the legislation is presumed constitutional if the classification scheme is rationally related to a legitimate governmental purpose. *Vargo, supra*, 457 Mich 60. Given the purpose of the statute, the burden is on the petitioner to prove that the classification is arbitrary and unreasonable. A rational basis exists for the legislation when any set of facts, either known or that can be reasonably conceived, justifies the discrimination. *Crego v Coleman*, 463 Mich 248, 259-260; 615 NW2d 218 (2000).

In *Proctor, supra*, 248 Mich App 468, the plaintiffs argued that the Freedom of Information Act (FOIA) prisoner exclusions, MCL 15.231(2), 15.232(c), treated incarcerated prisoners and convicted criminals no longer imprisoned differently, thus implicating the Equal Protection Clause. This Court applied the

rational basis test in *Proctor* because the FOIA prisoner exclusions were an economic measure implemented to stop abuse of public resources by prisoners. *Proctor, supra,* 248 Mich App 469. Because status as a prisoner is not a suspect classification, this Court found that "the Legislature's FOIA exclusions singling out incarcerated prisoners rationally relate to the Legislature's legitimate interest in conserving the scarce governmental resources squandered responding to frivolous FOIA requests by incarcerated prisoners." *Id.*

Again, because status as a prisoner is not a suspect classification, like the panel in *Proctor, supra,* we find that the exclusion of prisoners' ability under MCL 791.234 to appeal parole denials is rationally related to the Legislature's legitimate interest in saving public funds in response to innumerable frivolous requests by incarcerated prisoners for the review of the Parole Board's denials of parole. We recognize the government's legitimate interest in conserving the scarce governmental resources, and, accordingly, find that the Equal Protection Clause is not implicated by the elimination of appeals by leave granted for prisoners because the discrimination is rationally related to a legitimate governmental interest.

CONCLUSION

Parole decisions are not reviewable by the judiciary under the Department of Corrections act, the APA, or the RJA. The law is settled that prisoners have no legal right to parole, and we now hold that in Michigan prisoners have no legal right to seek judicial review of the denial of parole by the Parole Board.

Docket No. 239936 is reversed. Docket No. 240458 is affirmed.